IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BREWER CONSTRUCTION CO., INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-06-518-F |
| | ) | |
| SOUTHWESTERN BELL TELEPHONE, L.P., a Texas Limited Partnership, | ) ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This matter comes before the Court on the Motion for Summary Judgment filed pursuant to Rule 56, F.R.Civ.P., by defendant Southwestern Bell Telephone, L.P. ("SWBT"). Plaintiff Brewer Construction Co., Inc. ("Brewer"), has responded in opposition to the motion. SWBT has filed a reply, and Brewer has filed a surreply. Based upon the record, including the following undisputed facts, the Court makes its determination.

  1. On November 29, 2005, Brewer entered into a Joint Contract[1] with The City of Oklahoma City, Oklahoma City Water Utilities Trust and Oklahoma Public Property Authority (collectively "City/Trust").

  2. The subject of the Joint Contract was the "Gordon Cooper Street Realignment and Utility Improvements, Oklahoma State Fairgrounds."

  3. The Joint Contract encompassed four separate projects:

    (a) Project No. PC-0289 (pavement layout)

    (b) Project No. DC-0221 (storm sewer improvements)

---

[1] Brewer had submitted a sealed bid in the amount of $4,346,117.02 and was declared the lowest responsible bidder.

   (c) Project No. WC-0532 (waterline relocation)

   (d) Project No. SC-0699 (sanitary sewer improvements)

  4. The Specifications and Special Provisions governing the Joint Contract provided that "[w]ork . . . shall commence within ten (10) calendar days from the date on which the work order is issued and completed on or before one hundred ninety-six (196) working days from the commencement thereof."

  5. Brewer started work on the projects on January 3, 2006. It timely completed all four of the projects by July 31, 2006, and was paid.

  6. The Standard Specifications for Construction of Public Improvements was incorporated by reference in the Joint Contract. That document provided in part that

> "it will be the responsibility of the Contractor to have these utilities relocated to permit construction to continue. . . . The Contractor shall be required to coordinate his work with that of the utility companies or the City so that the relocation or adjustment of utilities and the work on the project can proceed in an orderly and timely manner."

Standard Specifications for Construction of Public Improvements § 110.14.

  7. SWBT's role in the projects was "[t]o move the cables out of the way." Deposition of Phillip Leon (December 14, 2006) at p. 65, line 19 ("Leon Deposition").

  8. Phillip Leon, SWBT manager of engineering and design services, attended a preconstruction meeting in July 2005. A timetable for the projects was discussed, and the projects were "considered . . . a rush." Leon Deposition at p. 70, lines 14-15.

  9. As early as December 2005, Leon began receiving telephone calls from Mike Foshee, Brewer estimator and coordinator, who advised that SWBT's "cables [were] in the way." Leon Deposition at p. 81, line 8. The telephone calls and a

subsequent meeting with Foshee at the fairgrounds prompted Leon to contact the City/Trust and ask for a set of site plans.

10.    Although Leon retrieved a set of plans "within the week," Leon Deposition at p. 87, line 7, SWBT took no other action in December.

11.    In mid-January and again "about mid-February," Deposition of Mike Foshee (November 10, 2006) at p. 42, line 13 ("Foshee Deposition"), Foshee and Leon met about cable relocation.  Foshee testified at his deposition that Leon promised that the cable would be moved by the end of February.  See Foshee Deposition at p. 43, lines 18-20.

12.    Foshee also testified that he had "[a]pproximately three or four," Foshee Deposition at p. 44, line 9, more meetings[2] before SWBT finally moved the cable on March 17, 2005.

13.    At his deposition, Kevin Brewer, Brewer vice president, was asked the following questions, and he gave the following answers;

"Q    [W]hat I'm asking you is how did it cause Brewer to lose money?

A    It backed up our whole schedule and threw us later.  And we worked harder to get this job done on a timely basis which they had given us, which is not very much time to begin with.

So therefore we had to throw more effort and work longer hours to finish this job on time."

Deposition of Kevin Brewer (November 10, 2006) at p. 60, lines 3-10 ("Brewer Deposition").

"Q    [C]an you just specify . . . how Brewer actually lost money due to this telephone cable conflict?

---

[2]Foshee testified that when the cable was not moved by the end of February, Leon represented that the cable would be moved by March 10 and then, by March 13.  See Foshee Deposition at p. 45, line 19; id. at p. 48, line 2.

3

> . . . .
>
> [A]   The days are time on this project, because of the penalties at the end.  We had to work longer, re-think our job.
>
> No, we did not pay our subs any more, but we had to . . . recoordinate the whole south end because of this, which took extra time and effort and energies and dollars to complete this."

Brewer Deposition at p. 62, lines 6-18.

> "Q   Were there any future jobs that this equipment particularly wasn't on, that made you lose money on those future jobs because the equipment was stuck on this job?
>
> A   The quicker we get off this job, the quicker we get on the next job.  And we truly hoped to finish this job earlier.  Instead, we got it to the last day."

Brewer Deposition at p. 68, lines 17-24.

Brewer filed the instant action on May 1, 2006, in the District Court of Oklahoma County, Oklahoma, and alleged in its state court petition

   (a)   that to perform its obligations under the Joint Contract, it became apparent that Brewer had to traverse underground cables owned by SWBT;

   (b)   that Brewer told SWBT in December 2005 that SWBT needed to relocate the cables; and

   (c)   that despite repeated requests from Brewer, SWBT did not remove the cables until March 17, 2006.

Brewer further alleged that SWBT owed a duty to Brewer to conduct its operations in a reasonable manner, that SWBT negligently breached that duty and that SWBT's breach directly caused damages, including delay damages, to Brewer. Brewer has contended in its submissions to the Court that its damages accrued from

4

March 2 to March 17, 2006, due to SWBT's failure to timely remove its fiber optic cable resulting in work stoppage, and from April 1 to April 12, 2006, because Brewer was unable to perform work beneath an originally scheduled inactive waterline, which, through SWBT's delay, had become active.

SWBT removed the lawsuit to this Court on May 11, 2006, and alleged that the Court had subject matter jurisdiction because the parties were of diverse citizenship and the amount in controversy exceeded the sum of $75,000.00, exclusive of interest and costs.  SWBT thereafter answered and also counterclaimed against Brewer, alleging that Brewer had negligently damaged telephone cable owned by SWBT.

Summary judgment as requested by SWBT is appropriate only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Rule 56(c), F.R.Civ.P.  The Court at this stage of the litigation does not evaluate the credibility of the witnesses, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), or "weigh the evidence and determine the truth of the matter . . . ."  Id. at 249.  Rather, the Court must decide "whether there is a genuine issue for trial . . . [and] there is no [triable] issue . . . unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Id. at 249-50 (citations omitted).  The Court's inquiry must be whether the evidence, when viewed "through the prism of the substantive evidentiary burden," id. at 254, "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.

Brewer has asserted three causes of action against SWBT–negligence, negligent misrepresentation and promissory estoppel, and SWBT has challenged Brewer's ability to prevail on each of these claims.

To establish its claim for negligence, Brewer must prove inter alia that SWBT owed Brewer a duty. Indeed, "'[t]he threshold question in any suit based on negligence is whether defendant had a duty to the particular plaintiff alleged to have been harmed.'" Wofford v. Eastern State Hospital, 795 P.2d 516, 519 (Okla. 1990)(quoting Rose v. Sapulpa Rural Water Co., 631 P.2d 752, 756 (Okla. 1981)).[3] The existence of that duty is a question of law for the Court. E.g., First National Bank v. Honey Creek Entertainment Corp., 54 P.3d 100, 105 (Okla. 2002).

Whether a duty "exists depends on the relationship between the parties and the general risks involved in the common undertaking." Delbrel v. Doenges Brothers Ford, Inc., 913 P.2d 1318, 1320 (Okla. 1996)(citing Wofford, 795 P.2d at 519). In "decid[ing] whether a defendant stands in such a relationship to a plaintiff that the defendant owed an obligation of reasonable conduct for the benefit of the plaintiff," id. at 1320-21, "[t]he most important consideration [in the Court's analysis] . . . is foreseeability." Id. (citation omitted). The Oklahoma Supreme Court has recognized "that foreseeability is crucial in defining the scope of the general duty placed on every person to avoid negligent acts or omissions," id. (citation omitted), and "that a legal duty arises when a human endeavor creates a generalized and foreseeable risk of harming others." Id. (citation omitted).

Brewer has argued that common law has imposed upon SWBT the duty to exercise ordinary care and in particular, that SWBT "had a duty to Brewer and other members of the public to not cause harm to others attempting to utilize or perform tasks on City/Trust property and on a public right-of-way." Response at 12-13.

---

[3]"It is an established rule of law that there can be no actionable negligence where the defendant has breached no duty owed to the plaintiff. Just because the defendant has created a risk which harmed the plaintiff that does not mean that, in the absence of some duty to the plaintiff, the defendant will be held liable." Nicholson v. Tacker, 512 P.2d 156, 158 (Okla. 1973).

Under common law, no special relationship exists between Brewer and SWBT, and in the absence of any legally cognizable common law duty imposed on SWBT in this instance, the Court finds that Brewer has failed to establish the existence of any duty owed to Brewer by SWBT to relocate SWBT's cable within a time frame and in a manner desired by Brewer.

Likewise, Brewer has cited no statute or regulation that imposes a duty upon SWBT in this instance, and in the absence of any contractual relationship between SWBT and Brewer, the language in the Standard Specifications for Construction of Public Improvements incorporated by reference in the Joint Contract imposes no corresponding duty on SWBT[4] "so that the relocation or adjustment of utilities and the work on the project can proceed in an orderly and timely manner."

SWBT has also challenged Brewer's cause of action based upon SWBT's alleged negligent misrepresentations. Because this claim likewise "requires a breach of some legal or equitable duty," Rogers v. Meiser, 68 P.3d 967, 971 n.7 (Okla. 2003)(citation omitted), the Court finds, in the absence of any duty owed by SWBT to Brewer, that this claim must also fail as a matter of law.

SWBT has further argued that it is entitled to summary judgment on Brewer's claim based upon the theory of promissory estoppel. To prevail on this claim, Brewer must establish

    (a)    that SWBT made a clear and unambiguous promise;

    (b)    that it was foreseeable that Brewer would rely upon that promise;

    (c)    that Brewer reasonably relied on SWBT's promise to Brewer's detriment; and

---

[4] See City of Beaumont v. Excavators & Constructors, Inc., 870 S.W.2d 123, 129 (Tex. App. 1994)(telephone company that was not a party to contract between excavator and municipality had no duty to act in time frame and sequence orchestrated by excavator).

(d) that refusal to enforce the promise would result in hardship or unfairness. E.g., Russell v. Board of County Commissioners, 952 P.2d 492, 503 (Okla. 1997); see Restatement (Second) of Contracts § 90.

As stated, summary judgment is appropriate only in the absence of genuine material factual disputes. In drawing all reasonable inferences from the evidence in the light most favorable to Brewer, the Court finds that there is sufficient disagreement with regard SWBT's promises to relocate the cable and the reasonableness and foreseeability of Brewer's reliance on those promises to require submission of this cause of action to the ultimate factfinder.

Finally, SWBT has argued that it is entitled to summary judgment because Brewer has suffered no actual damages[5] and any damages it has suffered were not directly caused by SWBT's actions.[6] Because the record[7] contains sufficient evidence with regard to Brewer's expenditures and monetary losses allegedly caused by

---

[5] Brewer has also sought an award of punitive damages. In light of the Court's disposition of Brewer's claims for negligence and negligent misrepresentation and because Brewer has cited no authority that punitive damages are recoverable under a claim of promissory estoppel, the Court has not considered whether the recovery of such damages under these causes of action under the facts presented in this case is appropriate or proper.

[6] The parties' arguments regarding the issue of damages was considered only in the context of the remaining cause of action.

[7] SWBT has argued that the Court should disregard the Affidavit of Kevin Brewer on the grounds that certain statements contained therein contradict his deposition testimony. A contrary affidavit will be disregarded only "when it 'constitutes an attempt to create a sham fact issue.'" Burns v. Board of County Commissioners, 330 F.3d 1275, 1282 (10th Cir. 2003)(quoting Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir. 1986)). In applying those factors deemed relevant to the Court's determination, the Court finds that this witness was cross-examined and testified about damages, that he had access to evidence about the damages Brewer allegedly suffered at the time of his deposition and that the deposition testimony does not reflect sufficient level of confusion or uncertainty requiring clarification or explanation. Accordingly, the Court has relied on this witness' deposition testimony without regard to his affidavit, and in so doing, finds sufficient disputed evidence regarding damages to preclude summary judgment.

(d) that refusal to enforce the promise would result in hardship or unfairness. E.g., Russell v. Board of County Commissioners, 952 P.2d 492, 503 (Okla. 1997); see Restatement (Second) of Contracts § 90.

As stated, summary judgment is appropriate only in the absence of genuine material factual disputes. In drawing all reasonable inferences from the evidence in the light most favorable to Brewer, the Court finds that there is sufficient disagreement with regard SWBT's promises to relocate the cable and the reasonableness and foreseeability of Brewer's reliance on those promises to require submission of this cause of action to the ultimate factfinder.

Finally, SWBT has argued that it is entitled to summary judgment because Brewer has suffered no actual damages[5] and any damages it has suffered were not directly caused by SWBT's actions.[6] Because the record[7] contains sufficient evidence with regard to Brewer's expenditures and monetary losses allegedly caused by

---

[5] Brewer has also sought an award of punitive damages. In light of the Court's disposition of Brewer's claims for negligence and negligent misrepresentation and because Brewer has cited no authority that punitive damages are recoverable under a claim of promissory estoppel, the Court has not considered whether the recovery of such damages under these causes of action under the facts presented in this case is appropriate or proper.

[6] The parties' arguments regarding the issue of damages was considered only in the context of the remaining cause of action.

[7] SWBT has argued that the Court should disregard the Affidavit of Kevin Brewer on the grounds that certain statements contained therein contradict his deposition testimony. A contrary affidavit will be disregarded only "when it 'constitutes an attempt to create a sham fact issue.'" Burns v. Board of County Commissioners, 330 F.3d 1275, 1282 (10th Cir. 2003)(quoting Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir. 1986)). In applying those factors deemed relevant to the Court's determination, the Court finds that this witness was cross-examined and testified about damages, that he had access to evidence about the damages Brewer allegedly suffered at the time of his deposition and that the deposition testimony does not reflect sufficient level of confusion or uncertainty requiring clarification or explanation. Accordingly, the Court has relied on this witness' deposition testimony without regard to his affidavit, and in so doing, finds sufficient disputed evidence regarding damages to preclude summary judgment.

Brewer's reliance on SWBT's promises, the Court finds summary judgment for this reason is not warranted.

Based upon the foregoing, the Court

(1) GRANTS SWBT's Motion for Summary Judgment filed on February 1, 2007, to the extent SWBT is entitled to judgment as a matter of law on Brewer's causes of action based upon negligence and negligent misrepresentation; and

(2) DENIES SWBT's Motion for Summary Judgment to the extent SWBT has argued that it is entitled to judgment as a matter of law on Brewer's cause of action based upon the theory of promissory estoppel.

ENTERED this 16th day of April, 2007.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

06-0518p011(pub).wpd